# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| YANGJIANG XINHE HOUSEWARE CO., LTD., | |
| Plaintiff, | |
| v. | C.A. No. 1:25-cv-00365-JLH |
| TELEBRANDS CORP., | |
| Defendant. | |

---

### PLAINTIFF YANGJIANG XINHE HOUSEWARE CO., LTD.'s
### OPENING BRIEF IN SUPPORT OF ITS MOTION FOR TEMPORARY
### RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Dated:  April 23, 2025

RIMON, P.C.

By: /s/ Zhun Lu
Zhun Lu (#4427)
200 Continental Drive, Suite 401
Newark, DE 19713
Telephone/Facsimile: (302) 688-7566
zhun.lu@rimonlaw.com

OF COUNSEL

John E. Handy (admitted *pro hac vice*)
1765 Greensboro Station Place Tower I, Suite 900
McLean, VA 22102
Telephone/Facsimile: (703) 559-7360
john.handy@rimonlaw.com

*Attorneys for Plaintiff*
*Yangjiang Xinhe Houseware Co., Ltd.*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................. 2

    A.    Defendant Has Filed (and Is Filing) Serial Infringement Notices with Amazon ............. 2

    B.    All Claims of the Asserted Patents Require Lateral Expansion of a Water Hose ............. 4

        i.    US 11,608,915 ................................................................................. 5

        ii.    US 10,174,870 ................................................................................ 5

    C.    All Claims of the Asserted Patents Require Inner and Outer Tubes that Are Only Secured to One Another at the Ends of a Water Hose ................................................ 5

        i.    US 11,608,915 ................................................................................. 6

        ii.    US 10,174,870 ................................................................................ 6

    D.    Telebrands "Pocket Hose" Products ....................................................... 6

    E.    Xinhe's Garden Hoses ......................................................................... 8

    F.    Plaintiff's Garden Hoses Practice a Completely Different Patent .................... 10

III.    LEGAL STANDARDS .................................................................................... 10

IV.    ARGUMENT .................................................................................................. 11

    A.    Plaintiff Demonstrates Overwhelming Likelihood of Success on the Merits.................. 11

    B.    Plaintiff Will Suffer Irreparable Harm Without Injunctive Relief.................................. 13

    C.    Balance of Equities Unequivocally Favors Issuance of Injunctive Relief....................... 15

    D.    The public interest favors a temporary restraining order................................ 16

V.    NO BOND IS APPROPRIATE......................................................................... 17

VI.    CONCLUSION ............................................................................................... 17

i

# TABLE OF AUTHORITIES

## Cases

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001) ...................... 12

*Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296 (Fed. Cir. 2013) ................................ 16

*Beyond Blond Prods., LLC v. ComedyMX, LLC*, 2022 WL 1101756 (9th Cir. Apr. 13, 2022) ..... 3

*Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874 (C.D. Cal. 2020)..................... 3, 17

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012) ..................................... 16

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308 (Fed. Cir. 2009)...... 12

*Design Furnishings, Inc. v. Zen Path LLC*, No. CIV. 2:10-02765, 2010 WL 4321568
 (E.D. Cal. Oct. 21, 2010)................................................................................................... 2

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996) ......................................................................... 18

*Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121 (3d Cir. 2017)................................................. 16, 18

*Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866 (C.D. Cal. 2021) .... 1

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*,
 290 F.3d 578 (3d Cir. 2002).......................................................................................... 16, 17

*Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338 (Fed. Cir. 2006) ............................. 13

*Rsch. Found. of State Univ. of New York v. Mylan Pharms. Inc.*, No. 09-184-GMS-LPS,
 2010 WL 11475865 (D. Del. July 6, 2010)....................................................................... 16

*ThermoLife Int'l LLC v. Hum. Power of N Co.*, No. 2022-1316, 2022 WL 4592640
 (Fed. Cir. Sept. 30, 2022) ................................................................................................... 2

*Thermolife Int'l, LLC v. Human Power of N Co.*, No. 6-21-CV-00144-ADA,
 2021 WL 6303232 (W.D. Tex. Dec. 21, 2021)................................................................... 1

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364 (Fed. Cir. 2008) .................. 12

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009) ............................ 12

*Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365 (2008) ............................................... 12

*Yangzhou Ciyang Craft Prods. Co. v. Shengzhou Yuneng Trade Dep't*, No. 1:25-CV-83
 (RDA/WBP), 2025 WL 510237 (E.D. Va. Feb. 14, 2025)................................................. 2

**Rules**

Fed. R. Civ. P. 65 ................................................................................................................ 1, 17

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 65, Plaintiff Yangjiang Xinhe Houseware Co., Ltd.

("Plaintiff" or "Xinhe") respectfully moves for entry of a temporary restraining order ("TRO")

and preliminary injunction ("PI").  Defendant Telebrands Corp. ("Defendant" or "Telebrands")

has circumvented the legal system by filing frivolous notices with Amazon alleging that

Plaintiff's customers infringe U.S. Patent Nos. 11,608,915 (the "'915 patent") or 10,174,870 (the

"'870 patent") (collectively, the "Asserted Patents").  As a result, Amazon – without independent

investigation or consideration of Plaintiff's positions – summarily delisted countless product

listings from Amazon.  Such actions by Defendant have flipped the burden of proof for

infringement on its head by imposing immediate injunctive relief against Plaintiff's customers.

Courts have granted injunctive relief when other intellectual property holders have tried

similar extra-judicial gambits with Amazon.  For example, the Central District of California

recently ordered injunctive relief that is materially the same as that sought by Plaintiff here:

> The Court GRANTS Plaintiff's request for a preliminary injunction.  Defendants
> are hereby ordered to retract any patent infringement notices filed with Amazon
> concerning Plaintiff's purported infringement of the … Patent based on Plaintiff's
> sales of the [product].  In retracting their infringement notices, Defendants shall
> provide Amazon a copy of this order and inform Amazon that the Order invalidates
> the patent infringement notice and requires restoring product listings with the
> following ASINs: ….   Defendants are ordered not to file any further such
> infringement notices based on the same theory of infringement during the pendency
> of this case.

Order, *Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866 (C.D. Cal.

2021), ECF No. 38; *see also Thermolife Int'l, LLC v. Human Power of N Co.*, No. 6-21-CV-

00144-ADA, 2021 WL 6303232, at *1 (W.D. Tex. Dec. 21, 2021) (granting TRO "to

temporarily restrain [patent owner] from pursuing evaluation of the … patent through Amazon's

Patent Evaluation Process"), *appeal dismissed sub nom ThermoLife Int'l LLC v. Hum. Power of

N Co.*, No. 2022-1316, 2022 WL 4592640 (Fed. Cir. Sept. 30, 2022); *Design Furnishings, Inc. v.*

*Zen Path LLC*, No. CIV. 2:10-02765, 2010 WL 4321568, at *5 (E.D. Cal. Oct. 21, 2010) ("[D]efendant is temporarily restrained and enjoined from submitting notices of claimed infringement to eBay stating that plaintiff's auctions of wicker patio furniture violate defendant's intellectual property rights."). And courts have recognized that public policy favors granting injunctive relief under these circumstances:

> [T]he public interest is in fact benefited by granting a TRO, because absent [Amazon's] polices, designed to avoid [Amazon's] liability for intellectual property infringement, it would be the claimed [patent] holder who would bear the burden of proving the [patent] infringement.
>
> To withhold a TRO would allow anyone to effectively shut down a competitor's business on [Amazon] simply by filing the notice that the [competitor's] product allegedly infringes on the complaining party's [patent].

*Yangzhou Ciyang Craft Prods. Co. v. Shengzhou Yuneng Trade Dep't*, No. 1:25-CV-83 (RDA/WBP), 2025 WL 510237, at *4 (E.D. Va. Feb. 14, 2025) (quoting *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 888 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC*, 2022 WL 1101756 (9th Cir. Apr. 13, 2022)).

The same result is warranted here. The Court should expeditiously grant Plaintiff's motion for a TRO and PI, ordering Defendant to withdraw its baseless infringement complaints from Amazon so Plaintiff and its customers can stay in business for the entirety of this litigation. To rule otherwise would go against the public interest and reward Defendant for gaming Amazon's infringement notification procedures to run Plaintiff out of business.

## II.    STATEMENT OF FACTS

### A.    Defendant Has Filed (and Is Filing) Serial Infringement Notices with Amazon

Plaintiff manufactures garden hoses and supplies them to eight different resellers for sale on Amazon.com. (Decl. of Yinhai Chen in Support of Motion ("Chen Decl.") ¶ 2.) Plaintiff supplies two versions of its garden hoses to its resellers. (*Id.*)

On or about February 17, 2025, one of Plaintiff's resellers operating Amazon Store Name "la issa" received a notification from Amazon that garden hoses supplied by Plaintiff were delisted from Amazon.com for allegedly infringing the '915 patent.  (Chen Decl. ¶ 3, Ex. A (Amazon notification).)  The Amazon Standard Identification Numbers ("ASINs") of these expandable water hoses are B0DQKJ2HL9 and B0DR4F9QXV.  (*Id*.)

The Amazon notification advised "la issa" that "[w]e removed some of your listings [ASINs B0DQKJ2HL9 and B0DR4F9QXV] because we received a report from a rights owner alleging they ***may*** infringe upon their patent.  This is against Amazon policies."  (Chen Decl. ¶ 4, Ex. A at 1 (emphasis added).)  Therefore, Amazon's notification confirms that (i) Amazon delisted ASINs B0DQKJ2HL9 and B0DR4F9QXV ***only*** because it received a notification that the accused products ***may*** infringe Defendant's patent – not because it conducted any investigation into whether the ASINs actually infringe; and (ii) the ASINs were immediately delisted from Amazon.com upon receiving the infringement notification.

Defendant has continued submitting infringement notifications for either the '915 patent or the '870 patent, and to date has been responsible for removing 30 Amazon.com garden hose listings.  (Chen Decl. ¶ 5.)  The following table summarizes the 30 total garden hose ASINs (collectively, the "Accused Products") that have been delisted by Defendant:

|     | Amazon Store Name | Complaint ID | Asserted Patent | Delisted ASIN | Removed Date |
| --- | --- | --- | --- | --- | --- |
| 1.  | la issa | 17217185311 | 11,608,915 | B0DQKJ2HL9 | 2/17/2025 |
| 2.  | la issa | 17217185311 | 11,608,915 | B0DR4F9QXV | 2/17/2025 |
| 3.  | DAMER_USA | 17268771361 | 10,174,870 | B0DRNX9KN2 | 2/26/2025 |
| 4.  | KINGGOLDTECH | 17321675071 | 11,608,915 | B0DT8Z6WH4 | 3/4/2025 |
| 5.  | HNLF DIRECT | 17328222041 | 11,608,915 | B0DRP818RN | 3/4/2025 |
| 6.  | DAMER_USA | 17328085921 | 10,174,870 | B0DRNWVXNV | 3/4/2025 |
| 7.  | DAMER_USA | 17328222041 | 11,608,915 | B0DRNWXQXP | 3/4/2025 |
| 8.  | DAMER_USA | 17328222041 | 11,608,915 | B0DRNW6FWT | 3/4/2025 |
| 9.  | DAMER_USA | 17321675071 | 11,608,915 | B0DRNYPHK2 | 3/4/2025 |
| 10  | DAMER_USA | 17358771051 | 11,608,915 | B0DRNY2F2X | 3/7/2025 |

3

| 11 | AOFACIAL-US | 17377704491 | 11,608,915 | B0DSC4JGP9 | 3/11/2025 |
|----|-------------|-------------|------------|------------|-----------|
| 12 | AOFACIAL-US | 17377704491 | 11,608,915 | B0DSC2WLL7 | 3/11/2025 |
| 13 | AMZBOSS DIRECT | 17377704491 | 11,608,915 | B0DRRL5NJN | 3/11/2025 |
| 14 | AMZBOSS DIRECT | 17377704491 | 11,608,915 | B0DRXMHH84 | 3/11/2025 |
| 15 | HNLF DIRECT | 17377704491 | 11,608,915 | B0DRXPCP34 | 3/11/2025 |
| 16 | AMZBOSS DIRECT | 17394962901 | 11,608,915 | B0DRRK16M3 | 3/12/2025 |
| 17 | AMZBOSS DIRECT | 17394962901 | 11,608,915 | B0DRRWRJG5 | 3/12/2025 |
| 18 | HNLF DIRECT | 17394962901 | 11,608,915 | B0DSZMQ9P6 | 3/12/2025 |
| 19 | HNLF DIRECT | 17394962901 | 11,608,915 | B0DRP736YC | 3/12/2025 |
| 20 | HNLF DIRECT | 17394962901 | 11,608,915 | B0DRP8987N | 3/12/2025 |
| 21 | HNLF DIRECT | 17394962901 | 11,608,915 | B0DRXLR6GF | 3/12/2025 |
| 22 | AMZBOSS DIRECT | 17400790451 | 11,608,915 | B0DRXH2WDQ | 3/13/2025 |
| 23 | AMZBOSS DIRECT | 17400790451 | 11,608,915 | B0DRRYQWV9 | 3/13/2025 |
| 24 | AMZBOSS DIRECT | 17400790451 | 11,608,915 | B0DRRY7XP8 | 3/13/2025 |
| 25 | AMZBOSS DIRECT | 17402233181 | 11,608,915 | B0DRRW68V4 | 3/13/2025 |
| 26 | AMZBOSS DIRECT | 17400790451 | 11,608,915 | B0DRRPVKQM | 3/13/2025 |
| 27 | AMZBOSS DIRECT | 17409912221 | 11,608,915 | B0DRRN7D1M | 3/14/2025 |
| 28 | AMZBOSS DIRECT | 17409912221 | 11,608,915 | B0DRRYMQ7H | 3/14/2025 |
| 29 | AMZBOSS DIRECT | 17460484231 | 11,608,915 | B0DRRJGBJJ | 3/27/2025 |
| 30 | Radioddity | 1752337351 | 11,608,915 | B0DWJXMTG1 | 4/3/2025 |

(*Id*.)  Each reseller received a materially identical email notification advising that ASINs were delisted because Amazon "received a report from a rights owner alleging they ***may*** infringe upon their patent."  (*Id*. ¶ 6.)  As indicated above, ASINs B0DRRJGBJJ and B0DWJXMTG were delisted after the Complaint was filed, confirming Telebrands will continue filing such infringement notifications absent Plaintiff's requested injunctive relief.

        B.     <u>All Claims of the Asserted Patents Require Lateral Expansion of a Water Hose</u>

The Asserted Patents, both entitled "Expandable and Contractible Garden Hose," disclose "[a] hose which automatically expands longitudinally and automatically expands laterally upon the application of a pressurized liquid[.]"  (Dkt. 1-1 (the "'915 patent") at Abstract; Dkt. 1-2 (the "'870 patent") at Abstract.)  Consistent with this description, all independent claims of the Asserted Patents require that a hose expand "laterally" (i.e., get wider) when under fluid/water

pressure:

    i.    <u>*US 11,608,915*</u>

Claim 1: "said increase in water pressure ***expands said inner tube*** longitudinally along a length of said flexible inner tube and ***laterally across a width of said flexible inner tube*** thereby expanding said hose to an expanded condition"

Claim 14: "an increase in water pressure within said expanding hose between said first and second couplers ***causing said elastic inner tube to expand*** longitudinally along a length of said elastic inner tube and ***laterally across a width of said elastic inner tube*** thereby increasing a length and width of said hose to an expanded condition"

(*See* '915 patent at Claims 1, 14 (emphasis added).)

    ii.    <u>*US 10,174,870*</u>

Claim 1: "said increase in fluid pressure ***expands said inner tube*** longitudinally along a length of said inner tube and ***laterally across a width of said inner tube*** thereby increasing said hose to an expanded condition"

Claim 16: "an increase in fluid pressure within said expanding hose between said first and second couplers ***causing said inner tube to expand*** longitudinally along a length of said inner tube and ***laterally across a width of said inner tube*** thereby increasing a length and width of said hose to an extended condition"

(*See* '870 patent at Claims 1, 16 (emphasis added).)

    C.    <u>All Claims of the Asserted Patents Require Inner and Outer Tubes that Are Only Secured to One Another at the Ends of a Water Hose</u>

According to the Asserted Patents, "The outer tube 12 is unattached, unconnected, unbonded, and unsecured to the elastic inner tube 14 along the entire length of the inner tube 14, between the two couplers, and thus the outer tube 12 is able to move freely with respect to the

5

inner tube along the entire length of the inner tube 14, between the couplers, when the hose expands or contracts." ('915 patent at 9:13-18;'870 patent at 9:4-9.)  This aspect of the Asserted Patents is recited in all independent claims:

      i.    _US 11,608,915_

Claim 1: "said flexible inner tube **unsecured** to said flexible outer tube **between said first and second ends** so that said flexible outer tube **can move freely over** said flexible inner tube"

Claim 14: "said elastic inner tube and said flexible outer tube being secured to each other only at said first and said second ends and **unsecured** to each other **between said first and said second ends**" … "whereby said elastic inner tube **moves freely** with respect to said flexible outer tube when there is no difference in water pressure between said first coupler and said second coupler"

(_See_ '915 patent at Claims 1, 14 (emphasis added).)

      ii.    _US 10,174,870_

Claim 1: "said inner and outer tubes **unsecured between said first and second ends** so that said outer tube is not held in frictional contact with said inner tube so that said outer tube can **move freely** along said inner tube"

Claim 16: "said inner and said outer tubes being secured to each other only at said first and said second ends and **unsecured** to each other **between said first and said second ends**" … "whereby said inner tube **moves freely** with respect to said outer tube when there is no fluid pressure differential between said first coupler and said second coupler"

(_See_ '870 patent at Claims 1, 16 (emphasis added).)

    D.    Telebrands "Pocket Hose" Products

It is Plaintiff's understanding that Telebrands owns the "Pocket Hose" brand and product. Consistent with the claims of the Asserted Patents, the Pocket Hose is an expandable water hose

with a simple ***double-layer*** interior structure to enable ***lateral expansion*** under water pressure and free movement of an inner tube with respect to an outer tube:



(Pocket Hose Silver Bullet, *available at* https://www.homedepot.com/p/Pocket-Hose-Silver-Bullet-3-4-in-Dia-x-50-ft-Lightweight-Kink-Free-Expandable-Water-Garden-Hose-13397-6/306703479.)  More details of this Pocket Hose design are disclosed in the Asserted Patents:



('915 patent at Fig. 6; '870 patent at Fig. 6 (annotations added).)  As described in the Asserted Patent specifications, "In this condition, the elastic inner tube **14** is in a relaxed contracted

condition wherein there are no forces being applied to the inner tube **14** to expand or stretch it. Also, it should be noted that ***the outer tube 12 <u>will not be in contact with</u> the inner tube 14 when the hose is in this contracted condition*. *There will be a <u>space</u> 15 between the inner tube 14 and the outer tube 12*** (FIG. 6).” (’915 patent at 9:20-27; ’870 patent at 9:11-18 (emphasis added).)

      E.     <u>Xinhe’s Garden Hoses</u>

The delisted ASINs are much different from the Asserted Patents and the Pocket Hose expandable water hose.  Both versions of Xinhe’s garden hoses consist of ***three layers***: an inner layer, a middle textile layer, and an outer layer:



(Chen Decl. ¶ 7.) (Photo of the internal structure the Accused Products.)  Because of this ***three-layer*** construction, which includes a middle textile layer instead of a gap like the Asserted Patents and the Pocket Hose expandable water hoses, ***the delisted ASINs can only stretch and retract longitudinally without any lateral expansion***.  (*Id*. ¶ 8.)  Moreover, when under fluid pressure, the outer diameter of the Accused Products decreases, which can easily be tested and verified:




The left photo shows the measured diameters (both 15.51 mm) of two Xinhe hose sections in their natural state. (*See* Chen Decl. ¶ 9.) The right photo shows one of the Xinhe hose sections attached to a water spigot. (*Id*.) After the water spigot is turned on, the attached Xinhe hose expands longitudinally, but **contracts** laterally to a width of 13.98 mm. (*Id*.) This is the exact opposite of what the Asserted Patent claims require – i.e., that the water hose diameter expand.

The green version of the Xinhe water hose includes adhesive between the inner layer and the middle textile layer such that the inner layer cannot "move freely" over or with respect to the outer layer. (*Id*. ¶ 10.) Instead, the inner layer and the outer layer expand and contract in unison because the outer layer is also bonded to the inner layer. (*Id*.)

9

F.    Plaintiff's Garden Hoses Practice a Completely Different Patent

Xinhe's garden hoses are covered by U.S. Patent No. 11,519,526, entitled "Extensible Flexible Hose, and Method for Manufacturing Thereof" (hereinafter, "Licensed Patent").  (Chen Decl. ¶ 11, Ex. B (the Licensed Patent).)  The Licensed Patent discloses a garden hose with "one elastic inner layer 1, one elastic textile reinforcement layer 2 and one elastic outer layer 3," as shown, for example, in Figure 6:



FIG. 6

(Licensed Patent at Fig. 6; 7:51-53.)  "[T]he elastic textile reinforcement layer has an axial elasticity and a radial constraint force, that allows the elastic textile reinforcement layer automatically elongating *and restricts the elastic textile reinforcement later from automatically enlarging* under working pressure given by a liquid flowing therethrough."  (Licensed Patent at 8:3-8 (emphasis added).)  Therefore, as explained by the Licensed Patent, the Xinhe garden hoses *do not widen when under water pressure* as required by the Asserted Patents.

III.    **LEGAL STANDARDS**

A patentee seeking a temporary restraining order and/or preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in

the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) and an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

## IV.    ARGUMENT

### A.    Plaintiff Demonstrates Overwhelming Likelihood of Success on the Merits

To infringe, an accused product must satisfy each claim limitation either literally or by an equivalent. *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008). The court must compare the accused product to the claims as properly construed. There is literal infringement only if each element is literally present. An accused product may infringe under "the doctrine of equivalents" if, "on a limitation by limitation basis … the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). This "function-way-result test is particularly suitable for analyzing the equivalence of mechanical devices." *Id*.

As explained above, all the claims in the Asserted Patents require that a water hose "expand … laterally across a width of said [] inner tube." *See supra* at Section II.B. The delisted ASINs, on the other hand, are expressly designed to prevent such lateral expansion. First, testing the delisted ASINs is a straightforward task, and demonstrates that the width of the hose ***contracts*** when filled with water. *See supra* at Section II.E; Chen Decl. ¶ 9. Second, these test results are predictable because the delisted ASINs are covered by a completely different Licensed Patent that discloses a hose structure with an elastic inner layer, an elastic textile reinforcement layer, and an elastic outer layer. *See supra* at Section II.F. Unlike Defendant's

11

Pocket Hose, which is designed with a gap between an inner tube and outer tube, *see supra* at Section II.D, and therefore facilitates lateral expansion of its inner tube, the delisted ASINs have no such gap and as a result can only stretch and retract longitudinally without any lateral expansion as required by the Asserted Patents. (*See* Chen Decl. ¶ 8.) Because this fundamental requirement of lateral expansion is necessarily missing from the delisted ASINs, Plaintiff has an extraordinary likelihood of prevailing on literal noninfringement.

Moreover, the green version of the Xinhe garden hose has an inner layer that is bonded to the middle textile layer. *See supra* at Section II.E; Chen Decl. ¶ 10. As a result, this Xinhe water hose cannot infringe the Asserted Patents for the additional reason that its inner layer cannot "move freely" over or with respect to the outer layer. (*Id.*)

Plaintiff cannot infringe the Asserted Patents under the doctrine of equivalents either. The doctrine of equivalents cannot cover a product that performs the exact opposite of what a claim requires. As explained by the Federal Circuit:

> This court has refused to apply the doctrine in other cases where the accused device **contained the antithesis of the claimed structure**. For example, in *Moore,* this court refused to find infringement under the doctrine of equivalents for an accused product with only a minority of adhesive strips where the claim called for a majority. 229 F.3d at 1106. Similarly, in *Asyst Technologies,* an unmounted computer was not an equivalent to a claim limitation requiring a mounted computer. 402 F.3d at 1195. Finally, in *Sage,* an elongated slot within, rather than on top of, the claimed container did not infringe under the doctrine of equivalents. 126 F.3d 1425-26.

*Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006). Therefore, consistent with longstanding Federal Circuit precedent, lateral **contraction** of the width of Plaintiff's garden hoses cannot be an equivalent of antithesis lateral **expansion** as required by all claims in the Asserted Patents.

B.    <u>Plaintiff Will Suffer Irreparable Harm Without Injunctive Relief</u>

There is no doubt that Plaintiff is, and has been, suffering irreparable harm in the absence of immediate injunctive relief.  The fact that Plaintiff will suffer irreparable harm is precisely the reason Defendant submitted its infringement notices with Amazon in the first place.

Xinhe supplies garden hoses to eight different resellers on Amazon.com.  (Chen Decl. ¶ 12.)  One hundred percent of Xinhe's revenue is from the sale and distribution of garden hoses.  (*Id*.)  After the ASINs were delisted, Xinhe lost almost 100% of its garden hose sales revenue because seven out of Xinhe's eight resellers can no longer sell Xinhe's supplied water hoses.  (*Id*.)

Xinhe has suffered significant financial losses as a result of Defendant's infringement notices.  (Chen Decl. ¶ 13.)  Xinhe's sales in January were $48,139.26; in February were $33,843.62; and in March were $108,136.02.  (*Id*.)  However, Xinhe has no incoming revenue for the month of April.  (*Id*.)  And during peak sales season between April to September 2025, five production lines were expected to produce 250,000 units of 50-foot water hoses per month.  (*Id*.)  With an approximate wholesale price of $10 per unit, an estimated $2.39 million is forecast to be lost in sales revenue during this 6-month period.  (*Id*.)  Because Xinhe's resellers will suffer comparable losses, Xinhe estimates that it could lose its resellers permanently if they are unable to resume business operations by May 2025.  (*Id*.)

Moreover, Xinhe has already had to halt further production of its garden hoses because the loss of sales on Amazon has rendered further sales and business with resellers impossible.  (Chen Decl. ¶ 14.)  Xinhe issued a work stoppage notice, accordingly.  (Chen Decl. ¶ 14, **Exhibit C** (work stoppage notice), **Exhibit D** (English translation of work stoppage notice).)  As indicated in the work stoppage notice, Xinhe has furloughed employees, but continues to pay a portion of their usual salaries.  (*Id*.)

With a nearly complete loss of any sales revenue, Xinhe has been unable to pay its suppliers.  (Chen Decl. ¶ 15.)  For example, Xinhe suppliers, Zhanjiang Xiashan Xinjia Rubber and Plastic Products Co., Ltd. ("Xinjia") and Yangjiang Xinqiang Trading Co., Ltd. ("Xinqiang") recently sent Xinhe demand letters for payments past due on various contracts. (*Id.*, **Exhibit E** (Xinjia's demand letter), **Exhibit F** (English translation of Xinjia's demand letter), **Exhibit G** (Xinqiang's demand letter), **Exhibit H** (English translation of Xinqiang's demand letter).)

The delisting of the 30 ASINs will also result in the imposition of significant storage and shipping costs.  (Chen Decl. ¶ 16.)  Xinhe's resellers will be obligated to either pay Amazon to store delisted products sitting in Amazon's warehouses, or else ship, store, and sell the products elsewhere at much higher expense.  (*Id.*)  A considerable portion of capital is now tied up in Amazon inventory that it cannot sell.  (*Id.*)

The delisting of the 30 ASINs also risks eliminating the favorable search rankings on Amazon's marketplace for Xinhe's resellers.  (Chen Decl. ¶ 17.)  The reseller search ranking status is essential to maintaining and growing sales levels.  (*Id.*)  Amazon's search ranking system benefits frequently purchased products, and the longer that Xinhe's garden hoses remain delisted, the harder and more expensive it will be for Xinhe's resellers to regain prime search placement on Amazon.com.  (*Id.*)

Finally, Defendant's infringement notices have hurt Xinhe's business reputation.  (Chen Decl. ¶ 18.)  Some potential clients who were in the process of discussing purchase intentions have now put their procurement plans on hold.  (*Id.*)  They said they would wait until the patent issue is resolved before proceeding with further discussions.  (*Id.*)

Therefore, absent a Court Order (i) enjoining Defendant from issuing patent infringement notices or otherwise causing any of Xinhe's garden hose products to be delisted, and (ii) ordering Defendant to retract all of its patent infringement notices to Amazon regarding the Asserted Patents against Xinhe's resellers, Defendant will continue to utilize Amazon's administrative and extra-judicial procedures to drive Xinhe out of business. Xinhe has already issued a work stoppage notice, is furloughing its employees temporarily while it seeks this TRO and PI, has no incoming sales revenue while the ASINs remain delisted, is unable to satisfy payment terms of supplier contracts, and is likely to lose its resellers permanently due to loss of business if they are unable to resume business operations by May 2025. Therefore, Plaintiff is suffering irreparable harm that is current, tangible, and an immediate threat to Xinhe's ability to remain in business. *See, e.g.*, *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)) ("[P]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("We are satisfied that this loss of market share constitutes irreparable harm."); *Rsch. Found. of State Univ. of New York v. Mylan Pharms. Inc.*, No. 09-184-GMS-LPS, 2010 WL 11475865, at *13 (D. Del. July 6, 2010) ("Depending on circumstances, evidence of price erosion, loss of market share, loss of profits, loss of research opportunities, and possible layoffs may constitute irreparable harm.").

C.    Balance of Equities Unequivocally Favors Issuance of Injunctive Relief

To balance the equities, a court considers the interest of all parties and weighs the damage to each. *See Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) ("We must now balance the parties' relative harms; that is, the potential injury to the [movant] without this

injunction versus the potential injury to the [respondent] with it in place.") (citing *Novartis*, 290 F.3d at 596).

There can be no real dispute that the balance of equities favors Xinhe. Absent injunctive relief, Xinhe's work stoppage will continue until it eventually goes out of business and loses all of its resellers. With an injunction, Defendant does not lose anything it has not earned – *i.e.*, inequitable injunctive relief on Amazon.com against Xinhe's resellers. Plaintiff simply asks the Court for a return to the status quo and appropriate burdens of proof.

Moreover, should Defendant ultimately establish that the Asserted Patents are valid and infringed, Defendant will have no difficulty recovering damages. Available records of Xinhe's sales will make tallying damages a straightforward exercise. It would be harder, in contrast, to calculate damages for Xinhe. Xinhe can never fully recover from the irreparable harm detailed above. And even recovering some damages for lost sales will require significant guesswork about the precise losses that Xinhe will have suffered as a result of Defendant's baseless infringement notices to Amazon.

D.   The public interest favors a temporary restraining order.

In granting an injunction ordering an IP rights holder to withdraw Amazon infringement notices, the Central District of California explained the strong public interest in granting a TRO under analogous circumstances:

> [T]he public interest is in fact benefitted by granting a TRO, because absent [Amazon's] policies, designed to avoid [Amazon's] liability for intellectual property infringement, it would be the claimed [intellectual property] holder who would bear the burden of proving the … infringement. To withhold a TRO would allow anyone to effectively shut down a competitor's business on [Amazon] simply by filing the notice that the [competitor's] product allegedly infringes on the complaining party's [intellectual property].

*Beyond Blond Prods.*, 479 F. Supp. 3d at 889. The same rationale applies here since Defendant has effectively procured its own injunction through a private party (Amazon) instead of

permitting the Court to decide the rights and liabilities of the parties in this litigation.  Moreover, "If a [movant] proves 'both' a likelihood of success on the merits and irreparable injury, it 'almost always will be the case' that the public interest favors preliminary relief."  *Issa*, 847 F.3d at 143.

## V.    NO BOND IS APPROPRIATE

Under Rule 65, the Court must ensure that the movant provides an appropriate level of security for an injunction lest the enjoined party be wrongfully damaged.  *See* Fed. R. Civ. P. 65(c).  The Court's discretion encompasses requiring no bond at all.  *See Elliott v. Kieswetter*, 98 F.3d 47, 60 (3d Cir. 1996) ("Where the balance of these equities weighs overwhelmingly in favor of the party seeking the injunction, a district court has the discretion to waive the Rule 65(c) bond requirement.").

Here, the injunctive relief sought would enable Xinhe to avoid bankruptcy and seek a declaratory judgment of noninfringement without the burden of premature and draconian private injunctions on Xinhe's resellers on Amazon.com.  Moreover, to the extent Defendant prevails on infringement, monetary damages can be readily calculated.  Therefore, the balance of equities overwhelmingly favors Xinhe, warranting waiver of the Rule 65(c) bond requirement.

## VI.    CONCLUSION

For the foregoing reasons, Xinhe respectfully requests a TRO and PI (i) enjoining Defendant from issuing patent infringement notices or otherwise causing any of Plaintiff's customers' products on Amazon to be delisted by asserting either of the Asserted Patents; and (ii) ordering Defendant to retract all of its patent infringement notices to Amazon regarding the Asserted Patents against Plaintiff's customers. Xinhe is, and has been, suffering irreparable harm by having to issue a complete work stoppage because it is losing near 100% of its total sales

revenue while its resellers are unable to sell Xinhe's garden hoses on Amazon.com. Xinhe should be afforded an opportunity to litigate these infringement allegations in court without the risk of imminent bankruptcy.

Dated: April 23, 2025

Respectfully submitted,

RIMON, P.C.

By: /s/ Zhun Lu
Zhun Lu (#4427)
200 Continental Drive, Suite 401
Newark, DE 19713
Telephone/Facsimile: (302) 688-7566
zhun.lu@rimonlaw.com

OF COUNSEL

John E. Handy (admitted *pro hac vice*)
1765 Greensboro Station Place Tower I, Suite 900
McLean, VA 22102
Telephone/Facsimile: (703) 559-7360
john.handy@rimonlaw.com

*Attorneys for Plaintiff*
*Yangjiang Xinhe Houseware Co., Ltd.*

18